1          UNITED STATES DISTRICT COURT

2       WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3    _____

4                                )
     PARLER LLC,                  ) C21-00270-BJR
5                                 )
                 Plaintiff,       ) SEATTLE, WASHINGTON
6                                 )
     v.                          ) July 1, 2021
7                                 )
     AMAZON WEB SERVICES, INC.,   ) 9:00 a.m.
8    and AMAZON.COM, INC.,        )
                                  ) Motion Hearing
9                 Defendants.     )

10   _____

11            VERBATIM REPORT OF PROCEEDINGS
         BEFORE THE HONORABLE BARBARA J. ROTHSTEIN
12            UNITED STATES DISTRICT JUDGE

13   _____

14

     APPEARANCES:
15

16

17   For the Plaintiff:     Angelo J. Calfo
                            Calfo Eakes LLP
18                          1301 Second Avenue
                            Suite 2800
19                          Seattle, WA  98101

20                          David J. Groesbeck
                            Attorney at Law
21                          1333 E Johns Prairie Road
                            Shelton, WA  98584
22

23   For the Defendant:     Ambika Kumar
                            Davis Wright Tremaine LLP
24                          920 Fifth Avenue
                            Suite 3300
25                          Seattle, WA  98104

1    THE CLERK:  United States District Court for the

2  Western District of Washington is now in session.  The

3  Honorable Barbara J. Rothstein presiding.  This is the matter

4  of Parler LLC versus Amazon Web Services, Cause No. 21-270,

5  assigned to this court.

6    MR. CALFO:  Good day, Your Honor.  Angelo Calfo on

7  behalf of plaintiff, Parler.

8    MR. GROESBECK:  Good morning, Your Honor, David

9  Groesbeck on behalf of Parler.

10    THE COURT:  Counsel, have you given thought as to who

11  was going to go first here?

12    MR. CALFO:  I anticipated, since we made the motion,

13  we would go first.

14    THE COURT:  Okay.  We can do it that way.  It's stage

15  one, because Mr. Groesbeck's client has the burden of proof

16  here.  But, go ahead, Mr. Calfo, why don't you address the

17  court.  I figure we'll do this in 20 minutes a side, unless

18  my questions drag it out, okay?

19    MS. KUMAR:  Your Honor, can I make one clarification?

20  This is Ambika Kumar.  I'm here for the defendants, the

21  Amazon defendants.  And the other two counsel are for Parler.

22    THE COURT:  Okay.  I'm sorry, Ms. Kumar.

23    MS. KUMAR:  No worries.  I just wanted you to know

24  who represents who.

25    MR. CALFO:  Our motion is to remand this case back to

1    state court, where we think it belongs.  And looking at the

2    court's minute order, the first thing it wanted us to address

3    is whether or not there is subject matter jurisdiction.  And

4    the way I would like to frame that question, Your Honor, is

5    to look at the Ninth Circuit precedent on how the court

6    should look at whether there is jurisdiction.

7         And I think there's three principles that are important.

8    One, there's a strong presumption against removal of

9    jurisdiction.  Two, the defendant always has the burden of

10   establishing that removal is proper.  And I think three is

11   quite important, which is federal jurisdiction must be

12   rejected if there is any doubt as to the right of removal in

13   the first instance.  So I'd like to frame it in that way

14   first.

15        I would note, Your Honor, though, that we have proffered

16   to Amazon, and in our pleadings to the court, that there is

17   no subject matter jurisdiction in fact, either.  I've looked

18   at the trust instrument at issue.  It's a donative trust.

19   There is no jurisdiction.  But I think there's broader

20   principles here at play.  Let's look at the notice of removal

21   that was filed on March 3rd.  That's many months ago now.

22        Amazon, alleged at paragraphs 9 through 11 of that notice

23   of removal, that Parler was a citizen of Nevada based on the

24   fact that its principal place of business was in Nevada.

25   Your Honor, I think that was -- I think it's fair to say

1    that's an objectively unreasonable allegation.  As a matter

2    of law, first of all, had anyone opened a book and looked at

3    a Ninth Circuit case, they would have found that the

4    citizenship of an LLC, for purposes of diversity, is measured

5    by the citizenship of its members; and that the principal

6    place of business has nothing to do with that issue.

7         So, it's just inaccurate, from a legal standpoint.  And,

8    unfortunately, I have to say that it was a dereliction on

9    their part to have made that allegation.

10        Now, factually, Your Honor, I was struck by an assertion

11   in Amazon's opposition brief to our sanctions motion where

12   they make the following statement:  At the time of removal,

13   Amazon had no information regarding Parler's members, beyond

14   the limited public reports and Parler's disclosure statement

15   in the first case it filed, which identified its members as

16   Rebekah Mercer and the Rebekah Mercer 2020 Irrevocable Trust.

17        I think that is an admission that there was an

18   insufficient basis to make the allegation, of any kind, at

19   the time of the removal notice.  And it's an admission that

20   they had no information.  Okay?  I mean, they now want to

21   allege on information and belief that there's some other

22   basis for jurisdiction.  But they're saying:  We had no

23   information regarding Parler's members, other than those two

24   things that were noted.

25        So, Your Honor, I think if we look at this from a pleading

1    standpoint, there, in my view, is little doubt that based on

2    the principle that federal jurisdiction must be rejected if

3    there's any doubt as to removal in the first instance, the

4    case has to be remanded.

5        Your Honor, there's been real and substantial harm here

6    from that objectively unreasonable allegation.  We have been

7    in federal court for four months, rather than in state court,

8    where we wanted to be.  We'd like to be pursuing discovery,

9    which we can do right at the time we file in state court.  We

10   could have potentially the e-mails that Amazon wrote that

11   will explain further why they terminated Parler from the

12   vendor contract.  We don't have those because of an

13   objectively unreasonable allegation that brought us into

14   federal court in the first instance.

15       And I think it would be fair to point out that -- the

16   court doesn't want us to argue the snap removal, and I won't,

17   but the pressures that Amazon was under at the time they made

18   that inaccurate and false allegation was to quickly file the

19   notice of removal.  And I think there was a decision made to

20   do it rather than do the reasonable investigation, because

21   there's really -- I can't believe with the quality of

22   lawyering on the other side, and the legal staff that Amazon

23   has, that they truly believed that Parler was a citizen of

24   Nevada, because its principal place of business is there.

25   The local rules defy that any such belief could be

1    reasonable.  The local rules say you have to allege the

2    citizenship of each member of the LLC.

3        So, Your Honor, those are the reasons why we believe that

4    the court should simply remand, without further inquiry.

5        And I know the next question the court has asked is should

6    we allow Amazon to do jurisdictional discovery?  Your Honor,

7    the way I would ask the court to think about this is as

8    follows:  Should we permit Amazon to leverage a false

9    allegation, in its removal notice, which got it into federal

10   court and delayed our state-court proceedings, on a snap

11   removal theory, to obtain discovery on a new theory of

12   jurisdiction?

13       And, Your Honor, I respectfully submit that the answer on

14   that should be no.  I think it would set a bad precedent.  I

15   don't think that courts, federal courts in dealing with

16   jurisprudence of removal of jurisdiction want litigants to

17   remove, based on a false allegation, something they should

18   have known is false, and then ask the court:  Hey, well, we

19   were wrong the first time, we've got some more information,

20   only because we're in federal court -- namely our corporate

21   disclosure statement -- and we'd like to do some discovery to

22   find out whether the representations in the corporate

23   disclosure statement are accurate.  I proffer to the court

24   they are.  And we'd like to get into federal court on another

25   theory.  And I just think that's not what the federal courts

1    have indicated that they would want to encourage.

2        Your Honor, aside from that, if you look at the standard,

3    if the court were -- and I know that the court is aware of

4    the standard for when jurisdictional discovery is

5    appropriate, there has to be some conflict, that they have to

6    proffer some admissible evidence that conflicts with our

7    assertion that jurisdiction is improper.  And there is no

8    conflict.  They don't have any -- they've admitted in their

9    sanctions motion, the reply to our sanctions motion:  We had

10   no information at the time we filed the removal notice, other

11   than what was publicly available.

12       And I think what the courts have said, look,

13   jurisdictional discovery isn't appropriate when the

14   proponent, the person who wants, the entity that wants to

15   take the jurisdictional discovery, has little more than a

16   hunch, that if I get more discovery I will -- there will be

17   -- there will yield -- discovery will yield jurisdictionally

18   relevant facts.  And I think that's all we've got here.

19       They've got no information that this trust is a commercial

20   trust.  It's never -- for example, they have no information

21   that it's sued anybody in its own name.  It can't, because

22   it's a traditional trust.  But that would be -- I mean, if

23   they had information like that, that might indicate that it's

24   a commercial trust.  If there's any indication that they're

25   carrying on business activity, like a real estate investment

1  trust would, that would be of interest, I think, to the

2  court.  It night justify jurisdictional discovery.  But

3  they've got nothing.  All they've got is our statement, this

4  is a traditional trust, our corporate disclosure statement

5  which says where the citizenship of the trustees lies.  And

6  they've got nothing to refute it.

7       So, now they're coming in and saying, well, we want to

8  allege on information and belief that it's a REIT.  I mean,

9  that's what they're saying.  We want to allege, on

10 information and belief, that Parler is not a citizen of

11 Delaware.  What they are really saying to you, Your Honor, is

12 that I can discharge my Rule 11 obligations and allege that

13 Parler is not a citizen of Delaware by saying -- on the facts

14 that currently exist.

15      But the fact of the matter is, they have no information

16 that the trust is a commercial trust.  And it isn't.  And

17 they have no reasonable belief that it is.  How can you make

18 an allegation on information and belief when you don't have

19 anything?  And I think, Your Honor, it's another way of

20 getting around the fact that when they originally filed,

21 there was no objectively reasonable basis to remove the case.

22      Your Honor, I will address the issue of the scope of any

23 discovery they may want to obtain on my rebuttal argument,

24 which I'll reserve.

25           THE COURT:  I think that's a good idea because at

1    this point we really have very little idea of what they're

2    seeking.  So, Mr. Groesbeck, turning to you.

3             MR. GROESBECK:  No, I represent Parler.

4             THE COURT:  You represent Parler.  I'm sorry,

5    Ms. Kumar.  You're the one who is going to give me the

6    argument.  I finally got that straight, Ms. Kumar.

7        All right.  Ms. Kumar, I'm looking forward to hearing from

8    you.

9             MS. KUMAR:  Your Honor, the court may well, and

10   there's reason to believe that the court may well have

11   jurisdiction over this dispute.  But only Parler can tell us

12   whether that's the case, and it has refused to do so.  And

13   that's why we're here today, and why you have three motions

14   pending before you on what is, essentially, the same issue.

15       Now, Parler claimed in its briefing that diversity is

16   lacking because its citizenship is determined by the

17   citizenship of the trustee.  It now appears to have changed

18   its tune and now argues that, as we argued, that a trustee's

19   citizenship does not always determine the citizenship of a

20   trust, it very much depends on the nature of the trust.  And,

21   indeed, in the *Demarest* case, the Ninth Circuit held that

22   there are several factors the court looks to when deciding

23   whether a trust is domiciled in a place of its trustee or its

24   beneficiaries.

25       And what the court held was, and what the Supreme Court

1    has held is that, if a trust is a, quote-unquote, traditional

2    trust, it is the trustee's domicile that governs.  And if the

3    trust is, quote-unquote, a non-traditional trust, it is the

4    beneficiaries' domicile that governs.

5        Now, what makes something a traditional trust?  The lines

6    are a little blurry.  And the courts are still working it

7    out.  But in *Demarest*, the Ninth Circuit outlined four

8    factors.  First, the nature of the trust as defined by

9    applicable state law; second, whether the trust has or lacks

10   juridical person status; third, whether the trustee possesses

11   real and substantial control over the trust assets; and

12   fourth, the rights, powers and responsibilities of the

13   trustee as described by the controlling agreement.

14       So the question isn't merely is this a business trust or

15   not?  The question is what degree of control does the trustee

16   have over the trust assets, and is this trust the type of

17   trust that can sue and be sued in its own name?  There are a

18   lot of factors that go into that.  And the only way for us to

19   know the answer is to see, at a minimum, the trust

20   instrument, as well as a few other things.  And I'm happy to

21   tell you what we're looking for.

22       But the reality is, you know, Parler is asking you to take

23   its say-so that the trust instrument demonstrates a lack of

24   diversity, and that this is a, quote-unquote, traditional

25   trust.  But we've not seen it.  The court hasn't seen it.

1    The court has a duty to -- the court should figure out

2    whether there's subject matter jurisdiction here.  And the

3    record is not sufficient.

4         And I'll remind you that we have asked for this

5    information.  We have agreed to treat it as confidential.  We

6    have also agreed to stipulate to a remand, should the

7    information show that diversity is lacking.  And yet Parler

8    still hasn't provided the information.

9         Now, Mr. Calfo made a lot of assertions about our conduct

10   in this case, and about our allegations.  I'd like to address

11   those.

12        Parler seems to claim that Amazon can't plead citizenship

13   on information and belief.  But the Ninth Circuit has

14   squarely held in the *Ehrman* case that, quote, a defendant's

15   allegations of citizenship may be based solely on information

16   and belief.  And that's exactly what Amazon has done.  Now,

17   with respect to the allegations that we violated Rule 11, or

18   we didn't have sufficient information, the excerpt that

19   Mr. Calfo read indicated that there were public statements at

20   the time.  And we didn't have anything else.  And, in fact,

21   the cases are clear, that where the information resides with

22   the other party, discovery is appropriate.

23        Now, the information and belief we have are the following:

24   Parler and its former CEO have made conflicting

25   representations.  The former CEO has said that the LLC that

1    is a member of Parler, quote, simply served as Mercer's alter

2    ego to mask her role in Parler.  Parler told a member of

3    Congress that that LLC, quote, is owned and controlled by

4    Rebekah Mercer.

5         And, indeed, in Delaware, where the trust was formed,

6    there are several types of trusts that are not,

7    quote-unquote, traditional trusts.  For example, there are

8    statutory trusts.  Those are set up for a business purpose.

9    And they can sue and be sued.  There are also

10   asset-protection trusts.  Those are self-settled trusts,

11   where the grantor and the beneficiaries are one and the same.

12   And the grantor may have substantial control over trust

13   property.

14        Parler, again, has declined to provide this information,

15   but we have certainly enough to overcome Rule 11's bar on

16   objectively unreasonable allegations.  Now, was there an

17   error in the initial notice of removal?  Yes.  We have

18   admitted it.  Does that mean that the court doesn't have

19   jurisdiction?  Absolutely not.  Under 28 U.S.C. 1653,

20   defective allegations may be amended in the trial, or even in

21   the appellate court.  And, in fact, this court has held that

22   a notice of removal can be amended for a failure to identify

23   the citizenship of an LLC.

24        And the Fifth Circuit has held that this is a common

25   mistake in pleading diversity jurisdiction.  And, indeed, it

1    came from Parler's own complaint, which said that plaintiff

2    Parler, LLC is a Nevada limited liability corporation, with

3    its principal place of business in Henderson, Nevada.

4         Now, Amazon has moved to amend its notice of removal, and

5    consistent with the Ninth Circuit, asks to assert, on

6    information and belief, that Parler is neither a resident of

7    Delaware nor a resident of Washington.

8         And the Ninth Circuit has held, in the *Ehrman* case, that

9    where a plaintiff challenges the truth of jurisdictional

10   allegations, quote, the district court should have permitted

11   discovery -- had it, in that case, I'm sorry -- had it

12   challenged the truth of the jurisdictional allegations, which

13   is what Parler does here, quote, the District Court should

14   have permitted jurisdictional discovery, had the defendant

15   requested it.

16        So, it seems pretty clear, under Ninth Circuit law, that a

17   trustee does not always determine the citizenship of a trust,

18   that one may allege, on information and belief, the

19   citizenship of another party where all of the information is

20   in that other party's control.  And that in such cases when

21   the defendant requests discovery, the district court should

22   allow it.

23        Now, we're not asking for voluminous amounts of discovery;

24   we think this can be done in a short period of maybe 30 days.

25   The discovery that we want includes the trust instrument, and

1   any documents relating to the creation terms and purpose of

2   the trust; the beneficiaries of the trust and their

3   citizenship; the date that JP Morgan Trust Company of

4   Delaware became a trustee; documents evidencing acquisition

5   of the LLC membership by the trust; and documents concerning

6   transactions, other transactions involving the trust.  And

7   I'm happy to explain why any and all of these are relevant.

8   But it is quite limited.

9            THE COURT:  Well, actually, Nos. 4 and 5 on their

10  face don't seem that limited to me.  And I don't know why you

11  need them.  I mean, I can see why you might want to look at

12  the trust instrument.  And Mr. Calfo has indicated that if

13  you look at the trust instrument, that will resolve the whole

14  thing.  And originally, in your brief, I got the impression

15  that's all you wanted to do was look at the trust instrument.

16  If you looked at the trust instrument, and you were convinced

17  it was a regular-old, traditional trust, then you would

18  stipulate.  Now you're actually asking for a bit more.

19    Now, the trust instrument and who the beneficiaries are, I

20  think, are joined together, because probably that's in the

21  trust instrument.  So you're not asking for more with that.

22  The date on which JP Morgan became trustee, that couldn't add

23  very much more.  So those three things sound to me like they

24  fall within very reasonable requests.  What about Nos. 4

25  and 5?

1          MS. KUMAR:  Yes, Your Honor.  So No. 4 is whatever

2     document demonstrates the acquisition of the LLC by the

3     trust.  We want to be sure that the trust, in fact, has an

4     ownership interest in Parler, LLC, there have been a lot of,

5     as I've said, conflicting representations in the public, and

6     even in this court, representations about Parler's membership

7     have changed.  That may be because the membership changed,

8     but it may be because one or more were inaccurate.  So we

9     really want whatever it is, and it should be a single

10     document, I would guess, that shows that the trust acquired

11     an ownership interest in the LLC.

12          The last category, documents concerning transactions

13     involving the trust.  The trust instrument is determinative

14     only if the trust instrument is being followed.  And there is

15     at least one case called *GE Oil & Gas* in a federal district

16     court in Louisiana, and the court held there, even though the

17     trust documents, "Would normally indicate the trustees are

18     the real parties to the controversy," the claims were that

19     the trust defendants were the alter egos of the grantors, and

20     that the grantors, not the named trustees, exercised the

21     customary powers to hold, manage and dispose of assets.

22          Now, this trust presumably has only been around -- it's

23     the 2020 irrevocable trust -- probably only been around for

24     maybe a year or two.  And the transactions should be

25     something that are easy enough to provide.

1     Now, in the *GE Oil & Gas* case, for example, the grantors

2  had made loans to themselves; they disregarded legal

3  formalities.  We want to be sure that, you know, that John

4  Matze, their former CEO, when he said that this is the alter

5  ego of Rebekah Mercer, we want to be sure that is not the

6  case.  And the only way to do that is to see how the trust

7  itself has been implemented.

8          THE COURT:  Okay.  I hear you.  I hear your reason

9  for needing No. 5.

10     Mr. Calfo, you wanted to do some rebuttal here, I believe.

11          MR. CALFO:  Thank you, Your Honor.

12          THE COURT:  Okay.

13          MR. CALFO:  I think the first point I'd like to make

14  is there was very little discussion of the burden of proof

15  here.  Who has the burden.  There was also very little

16  discussion of why Amazon alleged, to get into federal court,

17  that Parler's citizenship was determined by looking at its

18  principal place of business.

19     To me, those are two really important things that have not

20  been explained.  Why did they do that, Your Honor?  Why did

21  they remove, on the allegation that Parler's personal --

22  principal place of business is in Nevada?  That is an

23  objectively unreasonable allegation to make, for experienced

24  counsel, for a company like Amazon, with all its resources.

25  Why did they do that?  And it was a very harmful allegation,

1    Your Honor.

2        We've been languishing in federal court for four months,

3    because they made a decision to make an inaccurate legal

4    allegation to get themselves before you, Your Honor.

5        They know that they have to prove the membership -- the

6    citizenship of the members of the LLC in order to get

7    jurisdiction.   They didn't make any allegations about that in

8    their notice of removal.

9        And now, look at the slippery slope of discovery they're

10   asking for.   And, Your Honor, it's going to get bigger.

11   We're getting played -- we are, Parler, by Amazon.   Give us

12   the trust instrument.   Oh, no, no.   Give us the trust

13   instrument and the date that JP Morgan was -- and we want to

14   find out whether or not you're actually the alter ego, that

15   Rebekah Mercer is the alter ego.   And we want to find out all

16   your transactions.

17       You know, Your Honor, we know where this is heading, and

18   this is why we're asking the court to focus on standards.

19   Should they be able to leverage a false allegation that does

20   not give them a right to remove, and then come into court and

21   say:   We want to do a new one that we didn't know about

22   before, and we want to get discovery.   To us, I think the

23   policy, Your Honor, ought to be, do your work before you file

24   the notice of removal.   That's what I think the court said.

25           THE COURT:   Okay.   Were you finished, Mr. Calfo?

1    MR. CALFO:  I'm not yet, Your Honor.  Did you want me

2 to -- again, on the information and belief issue, Your Honor,

3 they cite the *Ehrman* case.  And that is just -- they mis-cite

4 it, Your Honor.  Here's what *Ehrman* said.  "We conclude, by

5 clarifying the scope of our decision, that because *Ehrman*" --

6 that would be us here -- "did not factually challenge Cox's

7 jurisdictional allegations, Cox did not need to provide

8 evidence of either Ehrman's or the purported class member

9 citizenship.  We hold only that Cox's jurisdictional

10 allegations, which were based on information and belief,

11 satisfied Cox's burden of proving minimal diversity."

12    It was a CAFA case.  And the Ninth Circuit took pains to

13 say, look, this is a very limited decision where you can

14 allege, on information and belief, diversity jurisdiction.

15 And I think the proper -- this case is a removal case that is

16 not based on CAFA.  They have to show complete diversity.

17 *Ehrman* says, by its own terms, it doesn't apply.

18    Your Honor, I'd like to quickly go over this issue about

19 the allegation that John Matze had said that NDM Ascendant is

20 an alter ego of Rebekah Mercer, and it masks her ownership.

21 That makes no sense, Your Honor.  Look at our corporate

22 disclosure statement.  We disclosed her interests in NDM

23 Ascendant in the public.  How can we be masking her

24 interests?  It makes no sense.

25    And then on the control issue, remember, that's a letter

1   from Parler's counsel to Congress, saying that she owns and

2   controls.  She does.  She owns it.  And she has a controlling

3   interest in it.  That is a far cry from saying that there's

4   an alter ego.  I control my law firm, you know, because I

5   have -- maybe I have a majority interest in it.  But it's not

6   my alter ego.  I have six other partners, so on and so forth.

7   So these are -- this is speculation, Your Honor.  And it's

8   speculation that doesn't make any sense.

9        Now, Your Honor, on the issue of jurisdictional discovery,

10  I said the words "slippery slope."  That's what is going on

11  here.  And I fear a lengthy battle, maybe for months longer,

12  again, seeking discovery for which they shouldn't get, where

13  they're going to start making all sorts of allegations to try

14  and create some other basis for jurisdiction.  And I would

15  ask the court not to do that.  But if the court were to do

16  that, I think the trust instrument will show the

17  beneficiaries, and we will provide information that will

18  verify the date on which JP Morgan became a trustee.

19       But I think beyond that, we are heading for a long

20  jurisdictional discovery battle.  Because these lawyers are

21  good.  They obviously know how to get what they want.  They

22  got into federal court, without knowing the information they

23  needed to, disregarding federal law, they got here.  Now

24  we're going to go on a long discovery slog.  And when are we

25  going to get our discovery in state court?  Months from now.

1        So, Your Honor, that's the conclusion.  I appreciate your

2   patience with my argument.  And we do request that the court

3   remand the case immediately.

4        THE COURT:  Ms. Kumar, did you want to add anything

5   in response?

6        MS. KUMAR:  If I can, Your Honor, I would like to.

7        We're good lawyers, but we're also apparently lawyers that

8   lie.  That's false.  Okay?  It was a mistake.  It was an

9   oversight.  It was an oversight based on the complaint that

10  they filed in the first case.

11       Not only that, it was a harmless mistake.  We would have

12  made the same allegations, on information and belief, that

13  Parler was not a citizen of Delaware or Washington.  Okay?

14  There's no, quote-unquote, substantial harm from the

15  allegation, because it would have been a different

16  allegation, also alleging diversity, based on the proper

17  standard.

18       In terms of the slippery slope, and I just want to point

19  out to Your Honor, you know, that in our briefing and in our

20  letter, we did ask for documents reflecting the nature of the

21  relationship between the trustee and the beneficiaries,

22  and/or establish the independence of the trustee.  So when I

23  talk about transactions involving the trustee, it's nothing

24  more than that.  And really it should not take very long for

25  them to produce this.  And we've said, if your information

1   shows that diversity is lacking, we will stipulate to a

2   remand.  And we asked for the trust instrument months ago.

3        So, you know, the idea that this is languishing, or that

4   Parler has been played, I mean, come on, this case is

5   supposed to be in this court.  Parler went judge shopping,

6   they went court shopping.  They engaged in a procedural

7   tit-for-tat.  And instead of cooperating and working this out

8   among counsel, they brought a Rule 11 motion.  They opposed a

9   motion to amend the notice of removal.  And they've brought

10  an amended motion for remand, on a basis that they didn't

11  even know about when they filed their first motion for

12  remand.

13       So I don't think it's fair for Parler to accuse Amazon or

14  Davis Wright of playing games or lying.  The reality is that

15  Parler is trying to flee this court.  And if there is

16  information indicating that there is subject matter

17  jurisdiction, we should be in this court.

18            THE COURT:  Okay, counsel, the court will be taking

19  this under advisement and get you a ruling.  But I can't let

20  you both go without making just a minor comment about the

21  fact that, in terms of the way counsel -- the fact that there

22  are good counsel on both sides has enabled counsel to play

23  each other in many different ways.  And I am not going to let

24  either side stand here calling the other side names.  It's

25  happened.  You all know the history of this case, as well as

1   I do.  And Parler played with as much of this process in

2   choosing courts as Amazon is trying to do now.  You both

3   clearly have an interest in choosing the grounds in which

4   this case will proceed, and both sides are doing everything

5   they can to bring that about.

6       Frankly, the function of this court is to try to see where

7   the law will take us as to which jurisdiction will hear this

8   case.  And the court intends to do that, to explore it

9   legally, not by counsel's utilization of various methods to

10  move from court to court.  It's interesting.  It's

11  interesting.  And, as I say, we have good counsel on both

12  sides, with lots of room to play, moving from court to court.

13  But there is the legal answer, and the court is going to

14  determine it, based on the law that should prevail, that will

15  dictate which jurisdiction will hear the case.

16      I will say, Mr. Calfo, that at least my thinking is that

17  there are three requests they're making that, according to

18  your argument, will solve the whole issue.  You said anybody

19  looking at the trust document will see it's a traditional

20  trust.  You say you looked at the trust document, it was a

21  traditional trust.  And that will tell who the beneficiaries

22  are, and it will answer when JP Morgan became trustee.

23      And I'm curious why -- I mean, I realize you're, on

24  principle, thinking they shouldn't be doing this, and for all

25  the reasons you gave me.  But in point of fact, that would

1  resolve, I think would resolve the case pretty quickly and

2  easily.  So I can tell you that's probably where the court is

3  going to go.

4      I agree with you that once we get into Requests 4 and 5,

5  maybe that was the case in that Oil & Gas case to look at all

6  the documents; but this is too simple.  And I probably

7  wouldn't be doing that.

8      But I will get you a ruling as quickly as possible, and

9  then you guys can take it from there.  I have a feeling I'm

10 going to be seeing you both again, which isn't a bad thing.

11 I enjoy seeing you.  But I suppose it would be too much for

12 me to think that we could resolve this in one hearing.  But

13 maybe we can.  You can surprise me.

14     So thank you very much for keeping your arguments very

15 much to the point.  And I will get you a ruling as soon as

16 possible.  Okay?

17         MR. CALFO:  Thank you, Your Honor.

18         MS. KUMAR:  Thank you.

19         MR. GROESBECK:  Thank you, Your Honor.

20         THE COURT:  Court will be at recess.

21             (Adjourned.)

22

23

24

25

1              C E R T I F I C A T E

2

3

4        I certify that the foregoing is a correct transcript from

5     the record of proceedings in the above-entitled matter.

6

7

8

9     /s/ Debbie Zurn

10    DEBBIE ZURN
      COURT REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25