The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PARLER, LLC,<br>Plaintiff,<br><br>v.<br><br>AMAZON WEB SERVICES, INC., and<br>AMAZON.COM, INC., Defendants. | NO. 2:21-cv-270<br><br>**ORDER GRANTING MOTION FOR REMAND; DENYING (1) MOTION FOR SANCTIONS AND (2) MOTION TO AMEND NOTICE OF REMOVAL; AND GRANTING MOTIONS TO SEAL** |

## I.    INTRODUCTION

This matter comes before the Court on the Amended Motion for Remand filed by Plaintiff Parler, LLC. Parler is requesting that the Court remand this case to the State Court of Washington, King County Superior Court, from which Defendants Amazon Web Services, Inc. ("AWS") and Amazon.com, Inc. (collectively, "Amazon" or "Defendants") removed it. Parler offers a number of independent grounds for remand. Parler (1) challenges this Court's subject matter jurisdiction; (2) claims a defect in the removal process; and (3) argues that the forum selection clause in the contract between Parler and AWS effects a waiver of any right of removal. Finally, Parler asks, in the alternative to remand, for the Court to dismiss this matter without prejudice to allow Parler to refile the complaint in state court in a manner that would prevent Defendants from removing it.

ORDER GRANTING MOTION TO REMAND

- 1

Because, for the reasons stated below, the Court finds for Parler on the first of these grounds, the Court grants Parler's Amended Motion for Remand. Finding it lacks jurisdiction, the Court concludes the remaining grounds for relief are moot. The Court also denies Defendants' Motion to Amend the Notice of Removal and Plaintiff's Motion for Sanctions.

## II.    BACKGROUND

Parler and one of the Defendants, AWS, originally came before this Court by way of a Complaint and Motion for Preliminary Injunction that Parler filed on January 11, 2021. *See Parler LLC v. Amazon Web Services, Inc.*, Case No. 2:21-cv-00031-BJR ("*Parler I*").[1] *Parler I*, like the instant case, centered on claims by Parler that AWS had impermissibly terminated the parties' contractual relationship in the wake of the January 6, 2021 attack at the U.S. Capitol and an apparent increase in violent and incendiary content on Parler's social media platform, hosted by AWS.  In *Parler I*, Parler stated federal antitrust claims, and asserted that this Court had federal question and supplemental jurisdiction under 8 U.S.C. §§ 1331 and 1337. *Parler I* Compl., ¶ 7.

On January 21, 2021, this Court denied Parler's Motion for a Preliminary Injunction, concluding that Parler had failed to demonstrate at that preliminary stage a likelihood of success on the merits on any of the three causes of action outlined in the complaint. *Parler I*, Order Denying Motion for Preliminary Injunction, Dkt. No. 34.

On March 2, 2021, Parler filed a Notice of Voluntary Dismissal of the *Parler I* complaint. *Parler I,* Dkt. No. 47. Earlier on that same day, Parler filed a new 66-page complaint in King

---

[1] Considering it is still in its preliminary stages, this matter already has a relatively lengthy factual and procedural history, but the Court will recite here only the facts relevant to removal and the instant motions. For additional background, see *Parler I*, 2021 WL 210721 (W.D. Wash. Jan. 21, 2021), Order Denying Motion for Preliminary Injunction, Dkt. No. 34.

ORDER GRANTING MOTION TO REMAND

- 2

1  County Superior Court, against AWS and a new defendant, AWS parent company Amazon.com,

2  Inc. ("*Parler II*"). Although *Parler II* is based on the same essential set of facts as *Parler I*, the

3  *Parler II* complaint bears little resemblance to that filed in *Parler I*. The *Parler II* complaint states

4  no federal claims, and outlines 15 counts under state and local law, for breach of contract and

5  violations of the Washington Consumer Protection Act, among others. *See generally Parler II*

6  Compl., Dkt. No. 1, Ex. 5.

7       The following day, March 3, Defendants filed a Notice of Removal in this case, minutes

8  before Parler served on them the state-court complaint. Defendants removed the *Parler II* matter

9  under 28 U.S.C. § 1332, with federal jurisdiction based solely upon the purported diversity of the

10  parties and the amount in controversy in excess of $75,000. Notice of Removal, Dkt. No. 1, ¶ 7.

11      The principle place of business (and thus citizenship) of both Defendants is Washington,

12  and under the "forum defendant" rule, they would typically not be allowed to avail themselves of

13  the removal statute for diversity cases filed in this state. 28 U.S.C. § 1441(b)(2) ("A civil action

14  otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of

15  the parties in interest properly joined *and served* as defendants is a citizen of the State in which

16  such action is brought.") (emphasis added). Filing the notice of removal *before* being "served as

17  defendants," however, Defendants took advantage of a questionable procedure known as "snap

18  removal," which exploits an almost certainly unintended (but under the plain language of the

19  removal provision, undeniable) loophole in the governing statute. *See Encompass Ins. v. Stone*

20  *Mansion Rest. Inc*., 902 F.3d 147, 152 (3d Cir. 2018) (removal statute's "plain meaning precludes

21  removal on the basis of in-state citizenship only when the defendant has been properly joined *and*

22  *served*.") (emphasis added); *Doe v. Daversa Partners*, No. 20-3759, 2021 WL 736734, at *4

23  (D.D.C. Feb. 25, 2021).

24  ORDER GRANTING MOTION TO REMAND

25   - 3

1    The day after removal, Parler filed a Motion for Remand, and the instant Amended

2    Motion for Remand on March 22, 2021. The Amended Motion argues, among other things, that

3    Parler is a citizen of Delaware, and shares that citizenship with Defendants, which are

4    incorporated in that state. 28 U.S.C.A. § 1332(c) (corporation is citizen of both state in which it is

5    incorporated and state in which it has its principal place of business). Parler argues that in the

6    absence of complete diversity of the parties, this Court lacks subject matter jurisdiction. *See*

7    *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) ("Since *Strawbridge v. Curtiss,* 3 Cranch 267,

8    2 L.Ed. 435 (1806), we have read the statutory formulation 'between ... citizens of different

9    States' to require complete diversity between all plaintiffs and all defendants.").

10    Parler's claim to Delaware citizenship is grounded in the assertion that one of its

11    members, NDMAscendant, LLC, takes the citizenship of one of *its* members, the Rebekah Mercer

12    2020 Irrevocable Trust (the "Trust"); which in turn, Parler argues, takes the citizenship of one of

13    its trustees, J.P. Morgan Trust Company, Inc., a Delaware corporate citizen. *See Johnson v.*

14    *Columbia Properties Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen

15    of every state of which its owners/members are citizens."); *GBForefront, L.P. v. Forefront Mgmt.*

16    *Grp., LLC*, 888 F.3d 29, 36 (3d Cir. 2018) (citation omitted) ("When a business entity consists of

17    constituent parts that are also business forms, the inquiry into jurisdictional citizenship can

18    become quite complicated. ... [T]he citizenship of unincorporated associations must be traced

19    through however many layers of partners or members there may be.").

20    Thus, as Defendants acknowledge, "[d]iversity jurisdiction hinges on whether the

21    Rebekah Mercer 2020 Irrevocable Trust—a member of an LLC that is a member of Parler—is, as

22    Parler claims, a citizen of Delaware because one of its two trustees is a Delaware corporation."

23    Defs.' Resp. at 5. In opposing the Motion for Remand, Defendants requested limited discovery

24    ORDER GRANTING MOTION TO REMAND

25    - 4

necessary to make that determination.

On July 1, 2021, the Court held a hearing on the motion and Defendants' request for discovery. The hearing focused on the question of Parler's citizenship, and in particular, on whether the Trust (and therefore Parler) is a citizen of Delaware. After the hearing, the Court granted Defendants' request for limited jurisdictional discovery and ordered Parler to produce: (1) a copy of the Rebekah Mercer 2020 Irrevocable Trust[2] instrument; and (2) documents demonstrating the respective dates on which (a) the JP Morgan Trust Company, Inc. became a trustee of that Trust, and (b) the Trust became a member of NDMAscendant LLC. Order Re: Jurisdictional Discovery, Dkt. No. 49. Parler did so, and both sides, as ordered, filed supplemental briefing on the import of those documents on the question of subject matter jurisdiction. Dkt. Nos. 60, 62.

## III.   DISCUSSION

### A.  Whether the Trust (and Therefore Parler) Is a Citizen of Delaware

*1.   A Traditional Trust Takes on the Citizenship of Its Trustees*

Defendants acknowledge that in general, where a "traditional" trust is involved, courts must look to the citizenship of the trustee to determine the citizenship of the trust. *Johnson*, 437 F.3d at 899; *see also GBForefront,* 888 F.3d at 38–39 ("We therefore conclude that the citizenship of a traditional trust is based solely on that of its trustee. The United States Courts of Appeals for the Second Circuit and the D.C. Circuit have concluded the same.") (citing *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 722 (2d Cir. 2017) ("We conclude that legal

---

[2] The Court notes that the document Parler produced in response to the Court ordering production of the trust agreement titles itself the "REBEKAH A. MERCER 2019 Irrevocable Trust Agreement." Doran Decl., Ex. A at 10. In the absence of claims or evidence to the contrary, the Court assumes the discrepancy is administrative and inconsequential, and not substantive.

ORDER GRANTING MOTION TO REMAND

- 5

1   proceedings involving such traditional trusts are effectively brought by or against their trustees

2   and, thus, it is the trustees' citizenship, not that of beneficiaries, that matters for purposes of

3   diversity.")); *Wang ex rel. Wong v. New Mighty U.S. Tr.*, 843 F.3d 487, 494 (D.C. Cir. 2016)

4   ("[T]he citizenship of a traditional trust depends only on the trustees' citizenship[.]"), *cert.*

5   *denied*, —— U.S. ——, 137 S. Ct. 2266, 198 L.Ed.2d 699 (2017).

6          As Defendants argue, however, recent cases have clarified that *only* a "traditional" trust

7   takes on the citizenship of its trustee. For divining the citizenship of a business trust, a real estate

8   investment trust, or any other type of increasingly common artificial business entity calling itself

9   a "trust," the Supreme Court has said that courts should "adhere to our oft-repeated rule that

10  diversity jurisdiction in a suit by or against the entity depends on the citizenship of '[its]

11  members.'" *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016) (quoting

12  *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990)). In the case of such entities, "members"

13  may be "shareholders," "owners," or "the several persons composing such association,"

14  determined with reference to specific states' laws. *Id.*

15          *2.  How to Determine Whether a Trust is a "Traditional" Trust*

16          The question becomes, therefore, whether the Trust is a "traditional" trust, or an artificial

17  entity that merely happens to call itself a trust. As the Supreme Court recently explained in

18  *Americold*, a traditional trust is not a juridical entity, but a fiduciary relationship that cannot sue

19  or be sued:

20          Traditionally, a trust was not considered a distinct legal entity, but a "fiduciary
        relationship" between multiple people. Such a relationship was not a thing that
21      could be haled into court; legal proceedings involving a trust were brought by or
        against the trustees in their own name. And when a trustee files a lawsuit or is sued
22      in her own name, her citizenship is all that matters for diversity purposes. For a
        traditional trust, therefore, there is no need to determine its membership, as would
23      be true if the trust, as an entity, were sued.

24  ORDER GRANTING MOTION TO REMAND

25   - 6

*Americold*, 577 U.S. at 383 (citing, *inter alia*, Restatement (Second) of Trusts § 2 (1957)); *see also Wang*, 843 F.3d at 495 ("According to *Americold* as well as the Restatement, a traditional trust for diversity generally describes a fiduciary relationship regarding property where the trust cannot sue and be sued as an entity under state law. More broadly, we conclude that a traditional trust is a trust that lacks juridical person status.").

In contrast, the term "business trust" or "commercial trust" refers to "the variety of unincorporated artificial entities to which states have applied the 'trust' label, but which have little in common with traditional trusts." *Loubier*, 858 F.3d at 722. A business trust is "created for the purpose of carrying on some kind of business or commercial activity for profit," and "has the attributes of a corporation." *In re Kenneth Allen Knight Tr.*, 303 F.3d 671, 680 (6th Cir. 2002); *Secured Equip. Tr. of E. Airlines, Inc. v. First Fidelity Bank*, 38 F.3d 86, 90-91 (2d Cir. 1994). In Delaware, a business trust has the capacity to sue or be sued, and must file a certificate of trust with the Secretary of State. 12 Del. Code §§ 3801, 3810.

For purposes of ascertaining citizenship, "[t]here are thus at least two inquiries a court should undertake when deciding whether . . . a trust is of the 'traditional' or 'business' variety." *GBForefront*, 888 F.3d at 40. The first is "whether the trust has the status of a juridical person." *Id*. (citing *Loubier*, 858 F.3d at 730–31 ("[B]ecause the party trusts here are not organized according to state law as distinct juridical entities but, rather, are traditional trusts, establishing only fiduciary relationships, they are incapable of being haled into court except through their trustees.")).

The "second, and closely related, inquiry the court should make focuses on the purpose of the trust—a traditional trust facilitates a donative transfer, while a business trust implements a

ORDER GRANTING MOTION TO REMAND

- 7

bargained-for exchange." *GBForefront*, 888 F.3d at 40-41 (citing *Wang*, 843 F.3d at 495); *see also N. Hills Vill. LLC v. LNR Partners, LLC*, 2020 WL 4745614 (W.D. Pa. Aug. 17, 2020) ("[T]he Court must look to the purposes of the trust to determine whether it either implements a bargained-for exchange, as in a business trust, or a donative transfer, as in a traditional trust.").

3.   *The Rebekah Mercer 2020 Irrevocable Trust is a Traditional Trust*

Reviewing the Trust Agreement produced in this case and the relevant law, the Court concludes that for purposes of determining citizenship, Defendants have failed to demonstrate—as is their burden—that the Trust here is anything other than a trust in the traditional sense. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it."). First, Parler asserts that "[t]he Trust lacks juridical person status and it cannot sustain a lawsuit on its own behalf." Pl.'s Resp. at 7. Defendants appear to concede this point. Defs.' Supp. Stmt. at 10 ("[T]he Trust is not an unincorporated business entity that sues in its own name.").

Second, Defendants have not disputed any of the substantive allegations Parler has made supporting its claim that the Trust established fiduciary relationships, the purpose of which is to facilitate donative transfers of property. *See* Trust Agreement, p. 1 ("███████████████

████████████████████████████████████████

█████."). As is apparent from the ███████████████ document produced by Parler, Rebekah Mercer transferred her interest in NDMAscendant to ███████████████

██████████████████. *See* Dkt. 61, Ex. B ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████). ███████████████████████████████

ORDER GRANTING MOTION TO REMAND

1   ███████████████████████████████████████████████████████

2   ███████████████████. The Trust is not an association of members that "implements a bargained-

3   for exchange," or "pertain[s] to shareholders who hold 'ownership interests' in trust property and

4   who have 'votes in the trust by virtue of their shares of beneficial interest.'" *Loubier*, 858 F.3d at

5   729 (quoting *Americold*, 577 U.S. at 382). ████████████████████████████████████████

6   ███████████████████████████████████████ *Id*. Defendants have not provided any

7   evidence that the Trust is a real estate investment trust or Delaware statutory trust, or an artificial

8   entity of any other kind formed for the purpose of conducting business.

9          Taken together, these attributes indicate that the Trust Agreement established fiduciary

10  relationships for the purpose of "facilitat[ing] a donative transfer," and not a business trust. *See*

11  *GBForefront*, 888 F.3d at 40-41. The Court therefore concludes that the Trust is a "traditional"

12  trust as that phrase is intended in the context of divining the citizenship of a trust, and for

13  jurisdictional purposes, the Court looks to its trustees.

14         *4.   Whether It Is Relevant That J.P. Morgan Is Merely an "Administrative" Trustee*

15         Defendants do not expressly dispute that the Trust in this case is "a fiduciary relationship

16  regarding property where the trust cannot sue and be sued,"—in other words, a traditional trust.

17  *Wang*, 843 F.3d at 495. Instead, they suggest that even if the Trust is "traditional," and even if

18  ████████████████████████████████████, the citizenship of the other

19  cotrustee, J.P. Morgan, should be disregarded because its role is merely "administrative" and

20  "clerical." They urge the Court to go beyond the relatively straightforward determination of

21  whether the Trust is a traditional one, and inquire further into the powers and rights of one of its

22  trustees to determine whether that trustee "possesses certain customary powers to hold, manage,

23  and dispose of assets for the benefit of others." Defs.' Supp. Stmnt. at 6 (citing *Demarest*, 920

24  ORDER GRANTING MOTION TO REMAND

25   - 9

1   F.3d at 1229).

2            As Defendants point out ███████████████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   ("Trust Agreement"), Doran Decl., Ex. A. ███████████████████████████████

5   ██████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████

7   ███████████████████████████████████████ Therefore,

8   Defendants argue, J.P. Morgan "is a 'trustee' in name only. Its purpose is to process paperwork

9   and exploit the benefits of Delaware's favorable law." Therefore, they argue, J.P. Morgan's

10  citizenship should be disregarded for purposes of determining the citizenship of the Trust. The

11  Court declines to complexify the inquiry in this case for at least three reasons.

12           a.  *Neither case law on point, nor a logical extension of the existing case law, directs the
                 Court to evaluate an individual trustee's role for purposes of ascertaining the trust's*

13               *citizenship.*

14           First, Defendants have failed to identify any case law holding that the citizenship of an

15  administrative trustee should be disregarded for purposes of determining a traditional trust's

16  citizenship.[3] On the contrary, as the Ninth Circuit observed in *Demarest*, the general proposition

17  _____

18  [3] Defendants cite *North Hills Village LLC*, for the proposition that trustee citizenship should be disregarded when
    trust beneficiaries hold certain powers. *See N. Hills Vill. LLC v. LNR Partners, LLC*, 479 F. Supp. 3d 189, 199

19  (W.D. Pa. 2020). That court's inquiry into the details of the trustee's powers, however, was made in service of
    ascertaining whether the trust was a traditional trust or a business trust; the court concluded it was the latter and in

20  fact, explicitly rejected the argument that a trustee's powers should be analyzed for purposes of determining the
    trust's citizenship. *Id.* (Plaintiffs "argue that the powers of the NHV Trust are highly concentrated in the trustee,
    which they say is evidence that the trust is merely a fiduciary relationship between multiple people and is not a

21  distinct legal entity. . . . the Plaintiff's argument here misses the mark. . . . As stated previously, *Navarro* does not
    apply here because there is no trustee that has sued or been sued in its individual capacity."). That case is therefore

22  not on point. Similarly inapposite is *GE Oil & Gas, LLC v. Waguespack*, 2021 WL 797480, at *5 (W.D. La. Mar. 2,
    2021). Defendants also cite this case as support for disregarding trustee citizenship. In that case, however, the court
    found that "[t]he trust instruments forming the Trust Defendants are simulations, whereby [settlor] and his wife

23  pretend to have settled distinct trusts, but continue to use the assets as if they were their own." There is no evidence
    here that ███████████████████████████████ or that the Trust is a sham.

24  ORDER GRANTING MOTION TO REMAND

25   - 10

that "[a] trust has the citizenship of its trustee or trustees" articulated in "*Johnson* remains good

law when applied to what *Americold* labelled traditional trusts; in such a case, . . . the trustee is

the real party in interest, and so its citizenship, not the citizenships of the trust's beneficiaries,

controls the diversity analysis." 920 F.3d at 1230 (citing *Johnson*, 437 F.3d at 899).

Nor does the Court agree, as Defendants argue, that "the most logical reading of

controlling precedent strongly suggests that a purely administrative trustee's citizenship should be

irrelevant." Defs.' Supp. Stmnt. at 8. Defendants cite *Navarro Savings Association v. Lee* for the

proposition that a "federal court must disregard nominal or formal parties and rest jurisdiction

only upon the citizenship of real parties to the controversy," and cite *Demarest*, quoting *Navarro*,

for the correlation that "a trustee is a real party to the controversy for purposes of diversity

jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets

for the benefit of others." *Id*. at 5 and 7 (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 464

(1980)). But *Navarro* does not control the question here. As cases have repeatedly reiterated,

"*Navarro* had nothing to do with the citizenship of [a trust]," the very thing at issue in this case.

*Americold*, 577 U.S. at 382 (citing *Carden*, 494 U.S. at 192–93); *Demarest*, 920 F.3d at 1228. In

*Navarro*, the Supreme Court examined the nature of the trustees' powers because those trustees—

and not the trust—had brought the lawsuit. In concluding that the trustees' (and not the

beneficiaries') citizenship controlled because the trustees were indeed the real parties in interest,

*Navarro* merely "reaffirmed a separate rule that when a trustee files a lawsuit in *her* name, her

jurisdictional citizenship is the State to which she belongs—as is true of any natural person."

*Americold*, 577 U.S. at 382–83. An imprecise inverse—that if a trustee lacks certain rights and

duties, its citizenship should be disregarded for purposes of determining a traditional trust's

citizenship—does not necessarily, or even rationally, follow. *See Quantlab Fin., LLC, Quantlab*

ORDER GRANTING MOTION TO REMAND

- 11

*Techs. Ltd. (BVI) v. Tower Rsch. Cap., LLC*, 715 F. Supp. 2d 542, 549 (S.D.N.Y. 2010) ("While SDTC's powers as administrative trustee may be relevant for determining whether SDTC may be deemed a 'real party to the controversy' under *Navarro,* and thus capable of suing or being sued on behalf of the trusts, a trustee's powers have no bearing on the citizenship of the trust.").[4]

And indeed, that proposition would be at odds with *Carden*. That case delved into the citizenship of a non-corporate artificial entity, a limited partnership, and thus is not directly on point. Nevertheless, the case squarely rejected "[t]he real party to the controversy approach" that would have instructed courts to rely solely on the citizenship of general partners, and disregard that of the limited partners. *Carden*, 494 U.S. at 193; *see Mills 2011 LLC v. Synovus Bank,* 921 F. Supp. 2d 219, 226–27 (S.D.N.Y. 2013) ("*Carden* rejected a test of citizenship for diversity purposes based on an inquiry into who are the real parties to the controversy."); *Quantlab*, 715 F. Supp. 2d at 548 ("rule that the citizenship of a trust depends, at least in part, on the citizenship of its trustee accords with *Carden's* directive that the citizenship of artificial entities depends on the citizenship of 'all of the entity's members.'").

### b.   *Courts should not strain to complicate a threshold jurisdictional question.*

Second, Defendants are asking the Court to do what precedents have repeatedly cautioned against; that is, to complicate the inquiry at the threshold jurisdictional stage with fact intensive

---

[4] Defendants assert that the court in *Quantlab* "is simply wrong," arguing "*Navarro* looked to the trustee's powers expressly to determine whether the trustee was 'a real party to the controversy *for purposes of diversity jurisdiction.*'" Defs.' Supp. Stmnt. n. 4. But *Navarro* did so because it was the trustees who brought the lawsuit; thus, whether they were the "real parties to the controversy" was the central issue in that case. But the trustees in neither *Quantlab* nor this case are parties, and thus the "real party to the controversy" inquiry is not required by *Navarro's* holding, as the *Quantlab* court correctly observed. 715 F. Supp. 2d at 547 ("*Navarro* . . . did not, however, directly address the issue of how to analyze the citizenship of a trust; they analyzed whether the plaintiffs . . . qualified as "real parties to the controversy" whose citizenship alone was determinative for diversity jurisdiction purposes."). It is Defendants' reading of *Navarro*, which—again—"had nothing to do with the citizenship of a trust," that is wrong. *Americold*, 577 U.S. at 382 (brackets and quotations omitted).

ORDER GRANTING MOTION TO REMAND

inquiries that would inevitably require additional court and party resources, before a case even

gets started. "[A] rule that requires a court to analyze the functions and powers of a trustee in

order to determine whether that trustee's citizenship should be considered for purposes of

diversity jurisdiction would place a 'great and unnecessary burden' on the litigants and the court."

*Quantlab*, 715 F. Supp. 2d at 549; *see Hertz Corp.,* 559 U.S. at 130 ("Complex jurisdictional tests

complicate a case, eating up time and money as the parties litigate, not the merits of their claims,

but which court is the right court to decide those claims."). To apply Defendants' proposed test

consistently, even in cases involving admittedly traditional trusts, courts would have to examine

the powers and duties not just of one trustee, but of all trustees whose citizenship might have an

impact on the existence of diversity. The byzantine complexity of these issues, and the delay in

substantive litigation that resolving them would require, counsel against this endeavor. In the

absence of authority directing it to do so, the Court declines to adopt this potentially extremely

burdensome standard.

> c. *Even under Defendants' proposed standard, it is not clear that J.P. Morgan's*
> *citizenship should be disregarded.*

Finally, even if the Court were to accept that "a purely administrative trustee's citizenship

should be irrelevant," as Defendants argue, expanding the jurisdictional inquiry to include

analysis of an administrative trustee's role as a general matter does not necessarily lead to a

disregard of J.P. Morgan's citizenship in this specific instance. Parler claims that ███████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████" Pl.'s

Resp. to Defs.' Supp. Stmnt. at 8. █████████████████████████████████

████████████████████████████████████████████

ORDER GRANTING MOTION TO REMAND

- 13

1 ████████████████████████████████████████████

2 ██████████████████████████████████████████████

3 ████████████████ The Trust Agreement provides that with certain exceptions, ████

4 ████████████████████████████ and ██████████████████████

5 ████████████████████████████ These are admittedly

"limited," and Defendants dismiss them as "merely clerical." But this Court is simply not in a

position, even if it were inclined, to weigh the relative significance of these powers when

determining the Trust's citizenship. *See Quantlab*, 715 F. Supp. 2d at 549*; see also Logan v. Hit*

*or Miss, LLC*, 2009 WL 1035018, at *4 (W.D. La. 2009) ("[I]t would be a mistake to complicate

the ascertainment of jurisdiction in this matter by making it turn on the precise division of

responsibilities between the Trustee and the Special Trustee.").

For the foregoing reasons, the Court concludes that the Trust is a traditional trust; and that

it takes on the citizenship of its trustees, including the J.P. Morgan Trust Company, Inc., a citizen

of Delaware. As a consequence, the Trust, and therefore NDMAscendant LLC, and therefore

Parler LLC—like Defendants—are citizens of Delaware, defeating complete diversity in this case.

The Court lacks subject matter jurisdiction over this controversy, and Parler's Motion for Remand

is granted.

### B. Defendants' Motion for Leave to Amend Notice of Removal; Motion for Sanctions

Parler has filed a Motion for Sanctions under Rule 11. Defendants removed this matter

alleging that Parler is a "limited liability corporation with its principal place of business in

Henderson, Nevada. Parler is therefore a citizen of Nevada." Notice of Removal, Dkt. 1, at 3.

Parler argues these allegations were made without objectively reasonable basis, and that it is

ORDER GRANTING MOTION TO REMAND

- 14

1    therefore entitled to an award of attorneys' fees associated with the removal and Motion for

2    Remand.

3            Defendants concede their allegation was made in error. However, the Court notes this

4    error may be traced at least in part to Parler's allegation in the *Parler I* complaint. There, Parler

5    alleged that it was a "Nevada limited liability corporation [*sic*] with its principal place of business

6    in Henderson, Nevada." *Parler I* Compl., Dkt. No. 1, ¶ 10. In its corporate disclosure statement

7    filed in that case, Parler repeated that it was "a limited liability corporation," whose members

8    included "NDM Ascendant LLC, a Delaware corporation."[5]   *Parler I*, Dkt. No. 3. There is no

9    evidence in the record that Defendants' allegation was anything other than careless, made in a

10   hasty effort to take advantage of the snap removal process; and it was certainly not an intentional

11   misrepresentation that Defendants could have hoped to get away with. In any event, the mistake

12   was at least arguably based on an error originally made by Parler itself, and for this reason, the

13   Court concludes it was not "objectively unreasonable" for Defendants to rely on Parler's claim as

14   to the nature of its legal status.

15           As for whether Defendants' insistence on pursuing removal, even after admitting Parler is

16   not a Nevada citizen, merits sanctions, the Court is confident that the issues raised in this motion

17   are, at a minimum, fairly debatable. And finally, as to the question of which side has more

18   flagrantly "gamed" the system, Plaintiff or Defendants, the Court is at a loss to say. Between

19   accusations that Parler falsely induced Defendants to delay filing an answer in *Parler I* in order to

20   buy time to voluntarily dismiss its complaint and refile in state court (after receiving an adverse

21   ruling in this Court), and Defendants' exploitation by mere minutes of the snap removal process

22

23   [5] Parler for a third time repeats a similar mistake, in its briefing on the Amended Motion for Remand, asserting, in error, that "one of Parler's members is NDM Ascendant LLC, a Delaware corporation." Mot. at 5. But as its name suggests, NDMAscendant LLC is an LLC, not a corporation.

24   ORDER GRANTING MOTION TO REMAND

25    - 15

and their substantively dubious (and shifting) bases for removal, the answer appears to be a draw. The Motion for Sanctions is denied.

Defendants have filed a Motion for Leave to Amend the Notice of Removal, seeking to alter their admittedly false allegation that Parler is a Nevada citizen, to allege that Parler is not a citizen of either Washington or Delaware. As stated above, this proposed amendment is incorrect. More to the point, because amending the Notice of Removal as Defendants propose would have no impact on the Court's conclusion that it lacks subject matter jurisdiction over Parler's claims, the Motion to Amend is denied as moot.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Amended Motion for Remand. Dkt. No 20. It DENIES Defendants' Motion to Amend, Dkt. No. 33, and Plaintiff's Motion for Sanctions, Dkt. No. 35. Furthermore, the Court GRANTS both parties' Motions to Seal, Dkt. Nos. 39, 44, 59, 64.

This matter is hereby remanded to King County Superior Court.

DATED this 17th day of September, 2021.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING MOTION TO REMAND

- 16